WILLIAM YOUNG et al., as Administrators of GEORGE YOUNG, Deceased, Respondents, v. THE SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COMPANY, Appellant.

1. APPEAL — NONSUIT — REVERSAL. A judgment of the Appellate Division reversing a judgment of nonsuit should be sustained, although the reasons given therefor or some of them are not tenable, if upon the record there is any valid reason for ordering a new trial.

2. TRIAL — NEGLIGENCE — FAILURE TO GUARD SWITCH. In an action by an administrator to recover damages for the death of his intestate, who was killed by the train upon which he was engineer running through an

open switch onto a side track and colliding with freight cars standing thereon, a nonsuit is improperly granted where the complaint alleges a failure on the part of defendant company to employ a sufficient number of men to operate its road in such a manner as to insure safety and freedom from unnecessary danger to its employees engaged in moving or operating the engines or trains over its road, and testimony is offered tending to prove that trainmen operated the switch when they needed to use the side track, and that no switchman was employed to guard it, and it does not appear that the intestate knew what the practice was in operating the switch or assumed the risk incident to the absence of a switchman at that point, since the defendant would be liable if it neglected to provide the intestate a reasonably safe place to perform his duties, or to furnish sufficient help to operate the road.

*Young* v. *S., B. & N. Y. R. R. Co.,* 45 App. Div. 296, affirmed.

(Argued February 1, 1901; decided March 12, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 5, 1900, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a trial term, and granting a new trial.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence.

The facts, so far as material, are stated in the opinion.

*William S. Jenney* for appellant. The evidence does not show that the defendant failed to provide plaintiffs' intestate with a safe place in which and adequate appliances with which to perform his duties. (*Kern* v. *D. & D. S. R. Co.,* 125 N. Y. 50 ; *Harley* v. *B. C. Mfg. Co.,* 142 N. Y. 31 ; *Bennett* v. *L. I. R. R. Co.,* 163 N. Y. 2 ; *Bajus* v. *S., B. & N. Y. R. R. Co.,* 103 N. Y. 312 ; *Sweeney* v. *B. & J. E. Co.,* 101 N. Y. 520 ; *Keeley* v. *E. R. R. Co.,* 47 How. Pr. 256 ; *Salters* v. *D. & H. C. Co.,* 3 Hun, 338.) The defendant owed plaintiffs' intestate no duty in regard to providing other rules than it had in force, nor was it required to employ a man to guard this switch. (*Larow* v. *N. Y., L. E. & W. R. R. Co.,* 61 Hun, 16 ; *Morgan* v. *H. R. O. & I. Co.,* 133 N. Y. 666 ;

*Burke* v. *S., B. & N. Y. R. R. Co.*, 69 Hun, 27 ; *Cullen* v. *Norton*, 126 N. Y. 1 ; *Donnelly* v. *N. Y. & H. R. R. Co.*, 3 App. Div. 408 ; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 468 ; *Simpson* v. *C. V. R. R. Co.*, 5 App. Div. 616.)

*George W. O'Brien* and *Louis P. Lang* for respondents. Even if plaintiffs' intestate knew of some danger at this point on defendant's road, still this would not require him to assume the risk of all danger that might come to him from it. (Wood on Mast. & Serv. 732 ; *Hawley* v. *N. C. Ry. Co.*, 82 N. Y. 370 ; *Mehan* v. *S., B. & N. Y. R. R. Co.*, 73 N. Y. 584 ; *True* v. *L. V. R. R. Co.*, 22 App. Div. 588 ; *Kranz* v. *L. I. Ry. Co.*, 123 N. Y. 1.) Reasonable care on the part of the defendant required it to employ a switchman to care for the switch at Preble, or, at least, it should have employed sufficient brakemen, so that it would not have been necessary for its employees to " block up " this switch when using same. (*Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549 ; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 40.)

O'BRIEN, J. The plaintiffs' intestate was an engineer in charge of the defendant's express train and was killed on the night of December first, 1895. The train was running south over a double-track road on schedule time at a rate of from thirty-five to forty miles an hour, leaving Syracuse for Binghamton at a little after ten o'clock in the evening. It was scheduled to run through Preble station without stopping, and on approaching that station ran upon a side track through an open switch and collided with freight cars standing there. The engineer and fireman were killed. The switch was so constructed that it displayed automatically a white target by day and a white light by night when closed and safe to the main track, and a red target by day and a red light by night when open to the side track. Immediately after the accident the switch was found to be open, blocked up and made stationary with a block and iron bar. The lock appeared to be opened without breaking and it hung on the switch. As the

train approached this switch in the night the lights upon it could not be seen until within about sixty feet of it, for the reason that a large water tank had been placed so near the track as to conceal the light until the engineer came within that distance of the switch. In consequence of the construction of the tank and the location of the switch signals, the view of the deceased was so obstructed that he could not see the red light that indicated that the switch was open until he was too close to stop the train in order to avoid passing through the open switch onto the side track. The signals were so concealed by the obstruction near the track that it could not be ascertained in the night whether the switch was open or closed until the engineer was so near that the train could not be brought to a stop until it ran onto the side track and collided with the freight cars, thus causing the accident in which the intestate lost his life. The deceased had been in the defendant's service for over ten years before the accident. At first he ran upon local freight trains, and for some years prior to his death he was employed upon the express train that was wrecked upon this occasion.

The learned trial judge nonsuited the plaintiffs on the ground that the deceased assumed the risk of the dangers resulting in his death, since he had the same knowledge of the location of the switch with reference to the water tank that the defendant had, and if the place was dangerous, due to the fact that the switch signals were concealed as described, he knew what the situation was and assumed the risk. The Appellate Division reversed the judgment and granted a new trial, and the defendant has appealed to this court. The question is whether the learned trial court was justified in disposing of the case as one involving only questions of law; and whether the learned court below had any legal ground for granting a new trial. If, upon the record, there was any valid reason for ordering a new trial, the judgment of reversal should be sustained even if the reasons given, or some of them, are not tenable. The plaintiffs' counsel excepted to the direction of a nonsuit and requested

that the case be submitted to the jury, which request was refused and the plaintiffs duly excepted.   Whether the learned trial judge was correct in his decision that the deceased assumed the risks of the business and that in this case the risk was as matter of law obvious we need not now decide, since there is another question in the case upon which the learned court below would have been justified, I think, in setting aside the nonsuit.   There can be no doubt that the track over which the deceased was required to run his train was actually in an unsafe condition on the night of the accident, due to the condition of the switch.   There was no proof in the case to show how or when it became unsafe by the opening and blocking of the switch.   The plaintiffs' counsel at the trial offered to prove that for sometime previous to the night of the accident the switch had been operated by brakemen or trainmen whenever it was necessary to use the side track, and that they were seen to block it, as it was found on the night in question, with a plank and iron bar, and then go away to uncouple cars.   The trial court excluded the evidence, apparently upon the ground that it was inadmissible under the pleadings, and to this ruling the plaintiffs' counsel excepted.   One of the grounds of recovery stated in the complaint was, that the defendant had failed to employ a sufficient number of men to operate its railroad in such a manner as to afford safety or freedom from unnecessary danger to its employees engaged in moving or operating the engines or trains over the road.   The testimony was admissible since it tended to establish this allegation of the complaint.   After the ruling excluding the evidence the record contains a colloquy or discussion which took place between the counsel and the court, in which the court said : " I think as a general proposition it may be inferred when you say brakemen were accustomed to operate that switch that there was no switchman there."   The testimony tended to prove that this switch was operated by the brakemen or trainmen from time to time as they needed to use the side track, and tended to prove that the defendant had not employed a switchman to guard or operate the switch.   If it had

employed a proper person to perform that duty, it may be said that the accident would not have occurred. It was the duty of the defendant not only to furnish to the deceased a reasonably safe place to perform his duties, but also a sufficient number of employees to insure reasonable safety in the operation of the railroad. If it failed in either of these duties, it could be held responsible for the accident. If the defendant allowed this switch to be operated by the brakemen and trainmen as they needed to use it and blocked as found after the accident, in order to dispense with the services of a switchman, it did not perform its duty to the deceased. Testimony on that question was admissible, and in the end it might become a question of fact for the jury whether the defendant was guilty of negligence in not employing a switchman to take charge of the switch in question. (*Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 40.) It cannot be claimed upon the record before us that the deceased knew what the practice was in operating the switch, or that he assumed the risk of any accident resulting from a default on the part of the defendant to employ a sufficient number of servants to operate the railroad with safety.

It follows that the judgment of nonsuit was properly reversed, and that the order of the Appellate Division should be affirmed, and judgment absolute ordered for the plaintiffs, on the stipulation, with costs.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Ordered accordingly.