CLAYTON A. RUGG, JR., Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31178.)

Third Department, May 21, 1954.

*Ernest B. Morris* and *Harold W. Katz* for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Richard H. Shepp* and *Wendell P. Brown* of counsel), for respondent.

HALPERN, J. In this case, the Court of Claims found that the State " was negligent in failing to provide the travelling public adequate warning of the dangerous condition that existed on this curve and the approach to the narrow bridge " but it nevertheless dismissed the claim upon the ground that the negligence of the State was not " the proximate cause of the accident ".

We affirm the finding of the State's negligence but we cannot accept the finding that there was no causal connection between the negligence and the accident.

The accident happened upon a State highway running in a generally easterly direction from Glens Falls to Hudson Falls. For the greater part of its length, the highway was a three-lane, concrete road, 27 feet in width, but as it approached an old bridge crossing a canal, the road narrowed to 20 feet to conform to the width of the bridge. Also, the bridge was so located with respect to the highway that the road had to turn sharply to the south in order to reach the bridge. The curve ended against the bridge on the right hand side and was 10 feet from the bridge floor at the center line. The curve was a very sharp one, described in engineering terms as a 22-degree curve, which would normally call for a sign warning of the approach to a right angle curve.

The Court of Claims correctly characterized this as a dangerous situation, of which motorists should have been warned by reflectorized signs, notifying them that they were approaching a sharp curve and that speed should be drastically reduced. There were no signs of that kind. There was a sign reading " Narrow Bridge " approximately 180 feet west of the bridge but whether the sign was reflectorized was in dispute. The Court

of Claims properly held that this sign was not an adequate warning of the nature of the danger. (*Canepa* v. *State of New York,* 306 N. Y. 272.)

The claimant's home was in Jamestown, New York; he was a salesman for the National Gypsum Company in the Adirondack territory and he had lived in Glens Falls for about ten months before the accident.

About 1:00 A.M. on April 5, 1948, the claimant was driving from Glens Falls easterly to Hudson Falls to take some friends home. He was driving about " 35 or 40 " miles per hour. As the Court of Claims found, he " apparently did not recognize the curve and the bridge until he was upon it ". He then applied his brakes but the automobile skidded ahead across the highway and struck and broke four guardrail posts at the north end of the bridge. The plaintiff suffered severe injuries as a result of the accident.

The claimant testified that his normal route in making business calls did not take him over this part of the highway but that he had been over the bridge on casual trips, all during the daytime; at one point, he testified that he had been over it " two or three " times, at another point, that he had been over it " several " times. The claimant answered in the affirmative when asked on cross-examination: " You knew that the bridge was there at the time, isn't that a fact? " and on recross-examination he said: " I knew there was a bridge there and a curve ".

The Court of Claims held, in view of the claimant's testimony, that the negligence of the State in failing to provide adequate warning signs was not material, that the signs would not have " added anything to the knowledge of the claimant as to the highway conditions ahead " and that therefore the negligence of the State was not the proximate cause of the accident.

Of course, if the claimant actually had the danger in mind as he approached the curve, warning signs would not have added anything to his knowledge. But we do not think that the evidence here supports a finding that the claimant actually had the dangerous situation in mind at the moment. To infer that he did, would require us to assume that, despite this knowledge, he recklessly drove straight ahead without abating his speed and without taking any steps to avoid the known danger. The trial court inferred too much from the statements elicited from the claimant on cross-examination. As the claimant explained on redirect examination, all he meant, by his answers, was that

he " knew there was a bridge on the road," just as he knew of the existence of bridges at various points on roads over which he had travelled in the past. It is not reasonably inferable that he meant that he actually had the situation in mind prior to his reaching the curve. On the contrary, as we have already noted, the trial court said at another point in its opinion that it was apparent that the claimant " did not recognize the curve and bridge until he was upon it ". The claimant testified both on direct and cross-examination that he first saw the bridge " Just an instant before the crash " and that he knew there was a curve there when he " went over it ".

In these circumstances, the absence of appropriate warning signs cannot be ruled out of the case as being causally unconnected with the happening of the accident. If the claimant did not have the situation in mind at the very moment of danger, road signs would obviously have been helpful in reminding him of the oncoming danger and in warning him of the need to take appropriate action. Only if we were able to find that the claimant, by reason of his recollection of prior trips over the road, knew of the danger just as soon as he would have known of it if there had been adequate signs along the road, could we say that the omission of the signs was not one of the proximate causes of the accident. Warning signs properly placed would have given the claimant notice of the dangerous situation while he was still several hundred feet away from the curve. Upon this record, it would be contrary to the weight of the evidence to find that the claimant actually had the danger in mind at the time he reached that point.

We are here concerned only with the simple question of " actual cause " or " cause in fact ", not with the more subtle doctrines of proximate cause based in part upon policy considerations (Prosser on Torts, pp. 321 *et seq.*). The negligence of the defendant cannot be excluded, as one of the actual causes of the accident, unless it can be said with certainty that, even if the defendant had not been negligent, the accident would nevertheless have happened. It is not enough to speculate " that the same harm might possibly have been sustained had the actor not been negligent " (Restatement, Torts, § 432, comment c). The negligent act must be regarded as one of the actual causes of the injury if it was a substantial factor in bringing the injury about (Restatement, Torts, § 431). Measured by this standard, in the light of our interpretation of the claimant's testimony, it cannot be held that the negligence of

the State was not one of the proximate causes of the claimant's injury.

Since the trial court exonerated the State from liability on the proximate cause issue, it did not reach the question of whether the claimant had been guilty of contributory negligence. This question must be sharply differentiated from the question of proximate cause. Under the elementary rule, even if the State's negligence was one of the proximate causes of the accident, the claimant is barred from recovering if his own negligence was also one of the proximate causes. The claimant is not necessarily to be charged with contributory negligence because he once knew of the danger and suffered a momentary lapse at the time when he needed the knowledge. The failure to have in mind the existence of a dangerous condition at the time one encounters it, even though there had been knowledge of the condition in the past, does not constitute contributory negligence as a matter of law. It presents, at most, a question of fact to be determined by the trier of the facts. (*Bassett* v. *Fish,* 75 N. Y. 303; *Young* v. *Syracuse, Binghamton & New York R. R. Co.,* 45 App. Div. 296, 301, affd. 166 N. Y. 227; *Sommerich* v. *Miller,* 291 N. Y. 769.) It is for the trier of the facts to say whether the failure to have the danger in mind was the result of such poor memory or such inattentiveness on the part of the injured person as to charge him with conduct falling below the standard of a reasonably prudent man (Restatement, Torts, § 289, comments f, g).

Other factual questions of contributory negligence may arise upon a retrial. There is the general question of whether the claimant operated his automobile in a reasonably prudent manner at the time of the accident. There is the specific question of whether, notwithstanding the absence of adequate warning signs, the claimant, in the exercise of reasonable care in maintaining a normal lookout, should have become aware of the fact that he was approaching a sharp curve, in time to avoid the accident.

While we have the power to pass upon all questions of fact arising in cases in the Court of Claims, including questions which that court did not find it necessary to reach, we believe that, in circumstances such as those here presented, the better practice is to remit the case to the Court of Claims so that the questions of fact may be decided by a judge who has an opportunity to hear and observe the witnesses. A new trial should therefore be ordered so that the issue of contributory negligence

and, if it becomes material, the issue of the extent of the plaintiff's injury, may be decided in the first instance by the Court of Claims.

The judgment of dismissal should be accordingly reversed on the law and the facts and a new trial ordered in the Court of Claims, with costs to abide the event.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Judgment reversed, on the law and facts, and a new trial granted, with costs to abide the event.